May it please the court my name is Paul Weiland and I represent the County of San Luis Obispo. I'd like to reserve five minutes for rebuttal. All right I'll try to help you out but keep your eye on the clock as well. Okay thank you. Judges Nguyen, Forrest, and Van Dyke in my limited time before you I will address the three issues that are the focus of our appeal. First is the legal error committed by the district court when it failed to apply the four-part winter test in determining whether to issue a preliminary injunction. The court improperly failed to consider the balance of the equities and the public interest in issuing an injunction that a leading expert declared could be expected to harm. I think it's a little ambiguous in your briefing you know I think we all probably understand your argument that that TVA versus Hall shouldn't apply when there's ESA species when there's other ESA protective species. What I was what I wasn't clear about is whether your argument is that they should consider as as the last two factors they should balance the balance the harms to the other ESA species only or whether somehow that then pulls in all the other things that you normally would consider if it wasn't TSA versus if there TVA versus Hall like like the harm to the communities and all I'm speaking only to the ESA claim here I'm not not talking about the state law claim so is your argument that you that the last two factors the district court should have should have applied the last two factors for the limited purpose of considering just the harm to other ESA protected species or that it would the fact that there's ESA protected species opens things up to where you can consider everything you would normally consider with an injunction on those last two factors. Yeah so as to that specific issue my argument is that once there's species on both sides of the ledger everything should be considered but more importantly why would that be I understand the argument as to why I mean just on the language of TVA versus Hall the the purpose the Supreme Court gave for essentially as we've interpreted at least truncating it to just the first two factors is that the last two factors are already sort of already pre-decided by Congress in that context because the the ESA critters get get lots of you know that get lots of protection and I understand your argument to be yeah but once you have ones on the other side of the ledger now that rationale of the Supreme Court isn't true but I don't understand what the what the rationale would be that you get to bring everything in including injured and non-protected humans you know and the communities and stuff like that. Yeah and I want you to clarify essentially the same issue is it your position that the Tennessee Valley Authority just doesn't have any application in the context where they're competing species at issue or is there some sort of presumption at work here? So I would say as a threshold in light of the Starbucks decision from June 2024 our position is that the four factors apply there is no clear command in the Endangered Species Act as there was in all cases. That's your threshold argument in all cases and the TVA versus Hill is gone. Right. Okay so I don't know if but let's assume let's assume for a second we don't agree with that then what's your argument after that? My argument after that well I would say if you look at TVA versus Hill it's a fact-bound case right and so one of the things that happened there was this involved the construction of the Teleco Dam. The parties agreed on the case before the court on the facts that the completion of construction operation they believed at the time would result in the extinction of the species. It was also a case involving the federal government and section 7 of the act which allows for consultation. Right no we recognize that TVA has different facts and I think that's why there's even this discussion of like okay what is the rule here going forward right because the rationale in TVA is that there that that Congress has already made some determinations and so that's why I raised the issue of presumptions. I'm not sure that Starbucks versus McKinney's that what you're citing to I don't know that that really answers the question as to whether the last two factors are now back on the table or is there some sort of presumption here where we can engage in some sort of balancing. I think the district court struggled with the same thing. It recognized that the last two factors may not operate in the same way but then it did try to attempt to do its best to sort of figure out well what's gonna happen to these other species and you know maybe in this area that's where the the expertise really come in for you to go to the appropriate authorities who would be in possession of information and sort of assist the county in determining where the balance should really fall. Yeah so in terms of the presumption there isn't clear circuit precedent from any circuit about what to do if there's species on both sides of the ledger right and so we've got the two cases that the parties briefed extensively CBDA and the Yurok tribe where courts dealt with species potentially being on both sides of the ledger and in those cases the court contemplated essentially designing an injunction to take it to take that into consideration but if you look at like the Yurok tribe case even there where the court frankly has some ambiguous language the court also considered for example the impacts on tribes and tribal water rights and so to so in that particular circumstance there was a weighing that occurred I think the the fault of the judge here was twofold one she she just didn't consider the the of the frog she acknowledged them but didn't consider the interest of the frog and the Gobi and then she presumed that the agencies would be involved in injunctive relief which they weren't and we indicated that below that the agencies which are not parties to this case wouldn't be involved in shaping relief and they have not been involved in shaping relief and so she assumed that what she called the appropriate agencies would help to fashion relief to avoid harm to the species they're not parties to this case they haven't been involved that was a false assumption and so even if you only focused on the species issues right and put aside for example the interests of the communities that are losing water on a daily basis you still come out reversing the lower court but I would say that once you have species on both sides of the ledger the whole point of the TVA case again part of it is this fact bound because the species was going to go extinct there and the facts showed that in that here there are no facts like that the second thing is that when it comes to like how you fashion the relief there was no mechanism for the agencies to weigh in the agencies were willing to do so we reached out to the agencies because we were required by the court to do so to ask for their guidance they said they weren't going to participate in the case they weren't they were not going to participate in the case yes and they do have the option part of the they get a 60-day notice under the Endangered Species Act is because they can jump in even before the case starts they can also obviously intervene in the case if they so choose or participate as an amicus party they chose to avoid participating in this case and the letters to that extent are in the right can they kill the case like I mean it's like a key tam action where they can take over or something the reason I'm asking that is in theory you can end up with a kind of an odd where the environmental group brings a like like a plaintiff here brings a case agency disagrees and I suppose that in theory they could intervene I suppose and present but can they you end up with a district court and an environmental group basically issuing something that the agency disagree you couldn't in theory and if the agency is not capable if the law doesn't give them the ability to say we don't we don't agree we want to shut this down do they do they have that ability or do they just as it's just that they can intervene if they want to they have the ability during the notice period to like file their own enforcement action and this is true with some other environmental right so they can pile on but I'm wondering if they thought that the case didn't have merit the only way they could get involved was through intervention or you know expose it not just that it doesn't matter but when you're talking about multiple species that they're more concerned about one of the other species and how in the effect and so they're like we just don't think you should do a but they don't there's no way for them to do that they could I mean I think through an amicus brief you know or a letter to the court what they said is okay I make sure I'm clear I think in theory they could do me because I suppose they could maybe even intervene what I'm asking I guess is they but that would be up to the judge to ultimately the judge would be the decider there but there's no way for them to come and say no we we didn't bring an enforcement action it we intentionally did not bring in an enforcement action because and we disagree with this enforcement action and we are killing this enforcement they don't have the ability to do that no not to my knowledge and here what they said in the letters that they submitted that are in the record was that they weren't going to participate and that they recommended that that the county work with the agencies through the habitat conservation planning process under section 10 which was a process that was already underway and so they said that's how they intend to engage with us not by process going to take to actually get anything going on the ground right now we have a order in place to submit a habitat conservation plan to the court by October 1st now one of the problems with requiring a habitat conservation plan is we can submit that to the court and to the agencies once we do that that doesn't necessarily result in any relief because then the agencies have an application for them they have to comply with the National Environment Policy Act by undertaking environmental review before they issue a permit they have to comply with the consultation provisions in section 7 of the Endangered Species Act they have other obligations for example under section 106 the short answer is it's going to be a while yes so what I'm trying to figure out is I mean I think you make a interesting argument about that the district court sort of punted on what to do with the competing species and thought that the federal regulators were going to deal with it and now here we are and maybe they are but it's going to be a while so what do we do about that my problem is in terms of the issues that are presented for us you didn't make that argument as far as I understand your argument really is improper legal standard because you didn't apply the full winter analysis if we disagree with you on that how do we get to this other issue you haven't made a separate argument of and even if I'm wrong about that the district court erred by not even considering and doing the work to assess whether the preliminary injunction needs to take specific measures to address the competing species well I do think maybe I can turn to the our second claim with regard to section 59 37 of the fish and go game code part of me that's okay but just I just want to be clear so I understand you want to shift gears to the state claim and I have some questions about that but in terms of the you agree with me you didn't make that other are you did not appeal likely to success in a reputable injury we did appeal on the remedy the scope of the remedy but we didn't appeal on those issues with regard to the endangered species act okay so you want to turn to the state claim I'm sorry I just want to make sure I understand so you you're saying you you did appeal that that the district court didn't consider those things right all right well what part did you not appeal then we we said the district court failed to consider the balance the equity of the public interest we did not appeal that the district court erred in its likelihood of success analysis with respect to the federal claim we do disagree with the district courts analysis but there's only so many things that we can appeal from and we chose three and those are the three issues that are before the court right and I think that we're kind of if I'm sort of discerning my colleagues questions correctly I'm sort of struggling with the same thing like as a practical matter what are we going to do with it so if we don't agree with you that that all the fact winter factors are now back squarely on the table then what do we do with it because the district court did say and I'm looking at the district courts preliminary injunction it did reference plaintiffs expert Tevin Smith and you know it talked about whether there's an adequate management process that can avoid harm to other species so this court was well aware okay there's the the Gobi and the red-naked frog that could be impacted here and is there like a flow or management technique that could sort of balance all of that so you want us to send it back but I'm not sure if we did don't agree with you on what the rule is I'm not sure what we're gonna say for the district court to do that she didn't already do which is attempt to mitigate the harm to these other species that may be affected I'm just trying to think like it's a practical matter if we don't agree with you on the initial rule then what do we do with it because the district court did struggle with it already right I mean I think that as we've talked about with regard to the public interest of balancing equities even if you narrowed it to just the species the district court dealt with it by kicking the can down the road and saying you're going to work with the appropriate expert agencies to fashion a remedy which we didn't do those agencies are not parties to the case and not participating and so that's a house of cards that just isn't there and as a consequence the whole premise for the district courts notion and and also with even respect to the water supply impacts at one point the district court acknowledges those impacts and says we can work with the agencies to try and fashion a remedy that's protective of the species and considers water supply those agencies are not participating so we are not working with them to do that as a consequence all right so you're saying that essentially the the facts on the ground didn't play out the way the district court anticipated so you want the district court to think about that again yes certainly okay you wanted the claim yes and as to the state claim so you know one of the challenges is that the district court granted on both claims there's no distinction between the remedies so we don't know if all remedies were for both claims or somewhere for some or somewhere the other there's no distinction that was made but with respect to the state claims the 5937 claims we argued both the likelihood of success and the balance of the equities and public interest and on these claims it's important one of the things that the appellate appellees raise and some of their amici is what the appropriate standard is under 5937 well the judge used what's called the historic fishery standard which is a standard from the California Trout 1990 Court of Appeal both parties had agreed on that standard and judge pardon me the judge acknowledged that that was the case so that's the correct standard and there's no issue of that we didn't appeal that but what we appealed from is her clear error in her factual findings under the historic fishery standard you compare the fishery before and after the construction of the dam and we submitted facts that demonstrated that the population before the dam in the 50s and 60s was comparable to the contemporary population I thought that the record also established that everybody agrees there really isn't historical data nobody was tracking this and any data can be pulled it's speculative right the data is poor right but but she had to decide what to do and what she decided was that there was a decline in the population but when you look at the State Department of Fish and Game data in the record that was not only relied on by State Department of Fish and Game but also by the National Marine Fishery Service and that our expert and plaintiffs expert acknowledged there is a table with data that shows that the population in the 50s and early 60s was estimated to be in the low hundreds downwards and the contemporary population the best estimate which is just that only the best estimate right from both plaintiffs expert and our expert is that the range is in the dozens to hundreds and where the court aired in particular where we see factual error here was that one she said that the county relied solely and she used that word solely on dr. Hansen's declaration to support our contemporary estimate of the dozens to the hundreds but mr. Schmidt came up with an identical estimate and the National Marine Fishery Service also had a similar estimate in the record and those are in the record at 253 for mr. Schmidt and 5803 for the National Marine Fishery Service that's in the dozens to hundreds the other thing that the court aired on in the same paragraph of the analysis is twice the court said she was not considering giving weight to dr. Hansen's testimony because he did not provide supporting exhibits for his declaration this is simply incorrect this was a mistake by the judge those exhibits were extensive they were attached to the declaration of Benjamin Rubin they're included in the excerpts of record below and here as volume 3 to 27 of the excerpts of record so she thought we hadn't included exhibits to support our expert views when in fact we had that is textbook clear error and if you wanted to save a little bit of time before you sit down I there's a recent California case is it Kern that talks about how maybe the analysis is different than what has been assumed under this state statute and when you come back up if you would address that I'd appreciate it good morning your honors this is Christopher Sproul for plaintiff appellee San Luis Obispo coastkeeper at all may it may it please the court I'd like to first address the courts expressed concern about what happens given that the court issued judge Garnett issued a preliminary injunction premised on well there's if there is some risk of harm to Tidewater Gobi and red-legged frog that'll be taken care of because the injunction requires the county to consult with with the resource agencies and learn their views and it is true that the court required that those plans about what to do with the flow be submitted to the resource agencies the National Marine Fishery Service and the US Fish and Wildlife Service and those agencies did respond well we're not going to comment on this ongoing case and we're not going to comment on these work plans but the thing that's being overlooked is they added however we will comment when you provide your habitat conservation plan the county is under court order by judge Garnett to file their habitat conservation plan on October 1st that's a mere six weeks away but you don't dispute do you I mean you read the district court opinion and it seems pretty clear to me that the judge thought that by sort of deferring on this other species who's all going to be hurt and how do we manage everybody she just deferred that question to the agencies with the expectation that the agencies were going to be able to comment on that if she thought that that if the judge thought that that was going to happen through the critical or the habitat planning that was already being provided why would that have been said separately well I think her I'm not entirely sure I understand the question but I think this is the important point is that her her premise like we'll get guidance from the agencies is a valid one it's true it didn't happen yet and one might say well retro retroactively a retrospectively maybe that could be seen as a problem but in fact it hasn't been I mean when my friend opposing counsel comes back up you can ask him it's certainly clear clear there has been no harm to I'm more concerned about the legal standard then sort of the practicalities on the ground I mean the practicality sort of inform how we think about this but the argument we're being faced with is the district court applied the wrong legal standard and and and did so because didn't consider harm to other species seems you know surprising that folks on your side of this case would say don't consider the other species involved here certainly that doesn't seem reasonable right yeah so then we think about what is the legal standard for thinking about other species and how do we deal with the fact that in this type of claim we have precedent that says that we only consider the first two aspects of winter and they don't seem to get at this other species issue and so the district court here says we've got conflicting evidence on this I don't really know what the impact of the other species is going to be so we're gonna have the agencies step in and tell us about that if that process with the agencies is going to be two or three years down the road then we've got an injunction issued to save one species that might have more immediate effects on other species that we can't wait two or three years to get addressed so what do we do there yes because I think the the problem or the issue or the defense from our perspective is that it won't be two to three years before we get the agency's views that we know that because the Habitat Conservation Plan guidance document that the agencies have published and it's on the internet I believe it's been referred to in the in in the record but in any case it's available on the internet mandates that the agencies are to work cooperatively with the applicants for Habitat Conservation Plans and incidental take permits under ESA section 10 and provide them their guidance and that's actually happening but right now regulators don't have to operate on any sort of schedule that the district court might want them to they're not parties to this case the court has no jurisdiction over them and so the district court is imposing an injunction to do certain things to favor one of the species that issue in this story and hoping that an agency is going to step in and provide guidance on other species involved in this story with no ability to know how that's going to go at all and we're just supposed to look and see if the district court was looking at the whole picture when it issued its relief that it issued and that's the problem that I'm figuring like where do we look at that because here we're sort of left with the district court didn't do that work and when we say that's fine well no your honor but but this that the district court didn't didn't abrogate this work entirely certainly I mean that the district court did clearly carefully and accurately explain the nature of the evidence the evidence is that there is clear and convincing evidence she said this is a mandatory injunction we've got to have clear and convincing showings we have a clear and convincing showing of harm to steelhead when it comes to Tidewater Gobi and red-legged frog we have conflicting evidence is how she characterized it what those are the facts what does she do I mean she adopted a mandatory injunction standard right so I I I have the same concern which is not so much the facts of this case but we're trying to figure out is a novel legal question of what should a district court judge do when you have when you have somebody comes before them and says hey we got this one protective species that we have concerns about but it's clear there's other protective species that might be affected by the relief offered and we can I guess we can talk about you know time frames in this particular case but the but the standard is kind of pretty important because we may be setting that in this case right and and and I seems to me the standard is does the district court need to figure this out at the time when it issues the injunction or can it kind of punt on the other species and and and hope that somehow the parties negotiating or the agencies will step in the gap and and I even if you were right that you know in ten minutes the agencies are going to come in in this case and and and solve the problem for us it just seems problematic to not figure out how things are going to affect I mean this case does illustrate that in a sense of steelhead salmon eat Tidewater gobies right they do they'd said the the EPA says they do I've got a date yeah they can eat the larvae not the big fish but yes yeah I thought Tidewater gobies didn't get big I'm sorry your honor no it's the salmon eat the gobies then they don't get big do they they're teeny sure we can I think the EPA says my EPA data sheet I got here says they eat them yes I'll take judicial notice of that so if you if you got what you wanted which was 5,000 instead of a dozen or a hundred steelhead it's these keep saying salmon I mean trout it's still had then it stands to reason they're going to eat more gobies and so this it really there is a zero-sum aspect of this at least I don't know what I'm not a biologist I don't know the answer but the question is do you want a district court saying okay we're gonna protect the one species and order relief and not figure out but but then order that you just hope that somebody will figure it out and you see the concern with that approach as opposed to saying mandatory injunction if they're if it's doubtful you don't issue a mandatory injunction let's figure it all out before we issue a mandatory injunction is again that I think that you're our case is very instructive here I think the district court judge there took the right approach which is this practical solution I mean we have clear and convincing evidence and and that's what this district court judge found there's clear and convincing evidence of steelhead harm conversely there's some evidence disputed over whether there's an impact to these other species what should we do in a search what if it turned out and what if it turned out that it's that addressing this clear and packed clear and convincing evidence is still had harm eliminated the Tidewater Gobi I mean let's just assume for a second that that would and and we don't know that we'll find you know we'll find that out after they're already gone what is that concerning at all of course it would be your honor but but those aren't but those aren't the facts I mean we don't know what the facts are that's the thing we the district court punted on the on the Gobi and the frog and so we don't know and and and I guess we're all speculating about when we will know and if the when the agency might help figure that out but doesn't it seem problematic that the district court issues an injunction I mean there's already there are certain aspects of the injunction have already gone in effect right more water flow some of the stuff has already gone into effect right yes it's all gone into effect and actually that's a very important point the county glosses over this but there are objections to the injunct the preliminary injunction or only to one of the eleven measures which is the flow I know I know but I'm saying this things have already gone in effect and let's say that those things are super successful in helping the same that the still had to do better but that hurts the tidewater Gobi not just in washing away there it's eggs and stuff the stuff that was presented but also in and we just don't know we don't we don't know right I mean you said it's not clear we don't know how effective it's I think it's it's unfair to characterize it that strongly that we don't know it feels a little bit like like you guys care deeply about the trout but you don't care as much about the tidewater Gobi for rational reasons because there's very strong clear convincing evidence there hasn't been a finding about that all the district court said is there is conflicting evidence on the impact to these other protected listed species not just any species out there but other protected species and and she decided she declined to like sort through that or make any sort of decision and just said the agencies are going to address this and the parties are going to work with the agencies to address this but she at least found this that there is no clear and convincing evidence of harm to steelhead I mean to Gobi and frog I I find out a little bit funny because you didn't bring a lawsuit about the Gobi and they're not you know they what are they going to come in you're not you're Gobi you're not bringing and are they going to step in and be like hey we're our stream is wiping out the Gobi like nobody's there for the Gobi so at the end of the day like it seems seems like it's a little unfair to say we don't know what's going to happen with the Gobi when that's they're not that's not what this case is about but actually that's not entirely true your honor we actually are there for the Gobi our complaint does express concern for the Gobi and the frog as well I mean we are concerned with all the species the preliminary injunction was focused on the steelhead because we were seeking an emergency relief we had to we could only tentatively come to court with a showing of clear and convincing evidence because we needed a mandatory injunction that one of the three species is in dire straits and do you know I'm actually are you guys convinced I guess I'm trying to figure out are so you care about the Gobi but are you convinced the Gobi won't be harmed at all by any of these measures is that but you're the court just didn't know but you're convinced or yes and it's not just us your honor it's the agencies as well and that's another point that's been glossed over is we don't have a total vacuum this is reminds me a little bit yesterday I think like you say the age how can it be true that the agencies are convinced when they've reserved the ability to weigh in on that I don't because they can can put in the agency's mouth that they think the Gobi should be just fine no I'm not putting it in their mouth your honor it's in the record the agencies have waited in the past the National Marine Fishery Service did comment on the 2004 draft habitat conservation plan and others the agencies have been working with the county for decades and they have indicated what they think needs to happen they've said there needs to be more water released for steelhead they've gone on the record if we if we conclude that TVA doesn't have direct application to this situation where they're competing species that are potentially harmed and that's some sort of balancing needs to be done do we then send it back to the district court to consider that more explicitly because you you seem to argue well she did she did think about the other species and I think she did but I'm not sure she did too much about it other than lean on the expertise of the agencies and that's an understandable instinct you know we're not at least speaking for myself I'm not equipped to handle handle these sort of like expert evaluations even assuming that there's expert evidence on each side but at the same time the winter analysis has to be engaged in so do we send it back to say well you know there are competing species here you've got to grapple with it as best as you can balance the equities better than than the record that we have and if the parties aren't satisfied I guess we'll see the case again well well to vacate that the preliminary injunction it's an entirety would be certainly an overreach on this this court's part in that the county itself is only are only arguing that there's a conflict between the speak needs of the species with respect to one of the eleven measures ordered by by the court the other measures are important for steelhead survival and recovery as the district court found at least those measures should remain in place even if the court is convinced well there wasn't enough analysis by the district court as to the if you're saying that it can be severed or the analysis of this can be separated absolutely they can and they they are there can they are by the county's own argument which makes complete sense because the other measures things like let's remove predators that eat from the watershed that can't possibly hurt tidewater goby or red-legged frog those same predators you said that the district court made no made a finding there was no clear evidence I think you said clear evidence clear convincing clear and convincing where in the record is that she did it's true she didn't use she didn't say that explicitly but she did I don't think she said anything about resolving the conflict of is there or is there not harm to these other species I think she said nothing about that I think she acknowledged there was evidence going both ways and said the agencies are going to sort this out so if I'm wrong about that I want you to point me to the record no I agree with that but it would only be by implication number one and let's go to the California claim because before you run out of time I have a couple of questions about the California claim do you agree with the with your friend on the other side of the aisle about what the definition of good condition is for this case no no your honor and you don't have to take the plaintiff's word for it you should rely on what is the state of California think about the interpretation of its own laws I understood your opposing counsel to say that in this case the parties proceeded with the understanding that the definition from California trout to was going to apply and that that wasn't challenged you're saying that's not true that that's not true we didn't say that these the standard for interpretation of California fishing game code 5937 is you just you just do a head count of how many fish were in the stream before the dam was built and how many are there today it's true okay I mean that makes sense and I'll go back and look at the record and see if I can find that that is sort of how this case progressed my follow-up question then is I've done a lot of spent a lot of time trying to figure out what good condition means in that California statute and as far as I can tell that Calif that one statement in California trout to which is sort of oddly placed in that opinion is the only statement from a California court that's like directly on point is there some other statement from a California authority about what how we should read good condition other than at the regulatory level no your honor not that I'm aware of not at regulatory level but I think what do we do like do we certify this question of the California Supreme Court what does this mean I think that actually is is certainly an option available to the court it might well be a good one that I would also point out is I think the court should is where is the California Supreme Court has taken up the bring back the current case on review the case you referred to the current case earlier and so that impact the question I'm asking you about what does good condition mean how does how does the current case impact that well the California Supreme Court should probably tell us when they issue their decision and to bring back the current case but I mean I only read current very quickly and my take away from it at this point is that current is saying that even if you had a situation where the standard under this California statute the number is escaping me 5937 your honor in 937 that has this good condition language even if you had a situation that satisfied that standard and you should take action for that purpose under that statute that you nonetheless still have to balance all uses of water for reasonableness and beneficial use so I'm not sure if that's what current is about that it's going to help us there if you figure out what the statute language of good condition means that is entirely possible you're correct that that was the issue at that certainly was the focus of the bring back the current case and it is the issue that the California Supreme Court has granted review to to resolve okay kind of related to the question judge force is asking I too is like what does this mean and I guess I couldn't get much traction from state law so how if at all does that weigh into the mandatory injunction standard in the sense of as you know you know you don't you're not supposed to do mandatory injunction it's kind of a do no harm principles I see it like you know you don't change the status quo unless you're confident that it's that you're you're not going to do any harm or make it worse and so if we don't if we can't figure out what the good condition means exact you know not just exactly but like is it is what does it take into account does that feed into federal courts not issuing a mandatory injunction you see you see how you could in theory you could say well I'm not going to issue man if I was a judge because I'm not sure what this means well I think that would be a bridge too far your honor I mean that would be ignoring the statute and the you know it wouldn't be because in theory the case continues right we're talking about a preliminary you're talking about you know you could at least for maybe I should modify my question to be preliminary injunction a mandatory preliminary injunction so saying I'm not sure I'm gonna issue this now because I don't know what it means come back to me with more I don't know but again preliminary relief is meant to prevent irreparable harm and such as extinction of a species if the species was going to be wiped out unless some affirmative mandatory action was taken it would be ignoring the intent of the legislature to say well we're not going to require someone to take that action because we can't figure out what good what good condition means I mean the law presents all kinds of difficult questions for the courts to resolve what it what's what's the do-care-do of a reasonable person and yet the courts are I know I get your point that eventually you got to figure this out but it but that doesn't but there is a difference between that and saying but I'm going to issue a preliminary injunction right now a mandatory injunction changing the status quo you don't you just don't think there's a relationship between it you got it you got it you got to rush to make the decision and and get that out even if you not sure what good condition means no I wouldn't go that far either your honor I mean I would say yes I would agree if this is where the court is going that extra caution is is called for when the statutory term is ambiguous but that doesn't mean disregarding it entirely I think the court is still obligated to do its best to give meaning to that term and to do such things as look at well what what have the resource agencies that are in charge of administering this what do they think I mean again under Loper Bright you don't have to defer to them but under Skidmore you consider them all California law so what does California think about a regulatory interpretation that we've briefed that and it's it's been made clear I mean the California Department of Fish and Wildlife the California I understand that the California regulators have a position on what that means what I'm asking is under California law what a California courts do with that do they give that binding weight do they give that deference you know I'm asking the Loper Bright question at the California level yeah my my understanding of California law is that there is deference given to state agency interpretations of the California statutes that they administer I think it's I don't know the exact doctrine but I think it's it's certainly not Loper Bright that and it's certainly at least Skidmore that they they do give consideration and if the court is it be happy to submit supplemental briefing on that and neither party has briefed that specific question thank you counsel you're over time we appreciate your argument thank you very much okay there's a lot to cover council let me ask you this we've been talking a lot about the the steelhead versus the Gobi what about all these other aspects of the preliminary injunction counsel is saying that the challenge on appeal is really narrow that's just incorrect as a matter of fact you can look at the brief and see we challenge the injunction is not narrowly tailored we gave a number of examples well let me jump in on that I mean one of the things that the injunction requires you to do is to go through this permitting process for an incidental take permit which for whatever reason I can't figure out the county has never bothered to do so would you say that if we think that there's a balancing species that we should undo that part of the injunction you can but the thing is that that doesn't just go to the flow releases for example because one of the things that the court required is habitat restoration when you're restoring habitat for steelhead the species overlaps with the red-legged frog if you go in and dredge the habitat for example well if we know that the agency is going to be participating in the permitting process and in that plan process and we know that they're already aware of this issue of multiple species because they've been asked to get involved and have said no so don't on that issue and that aspect of the preliminary injunction should we be concerned about multiple species can risks as long as the time is afforded for the process to take place to consult with the agencies but this gets back to one of the problems with the injunction being narrowly tailored to irreparable harm during the pendency of the action the point made by Judge Van Dyke was it a preliminary injunction is an extraordinary remedy right that's what winter says that's what Starbucks says so you don't have the entire entire injunction to be vacated yes haven't some of this been implemented yes what about the final predator have been implemented so the final predator removal plan was supposed to be adopted by April 2025 was that done we have adopted a number of plans there is then the whole process to implement those plans and let me just say with regard to so I'm trying to figure out you're asking that it be the entire injunction be undone but some of that order has already been implemented right I'd say if you vacate and remand then the court has many options in front of it one is to have a new preliminary injunction hearing at this point there's a lot fact evidence has closed in the case we aren't at a point where we have no complaint we only have a complaint and so there's a lot more information that the court can consider go back with a newer record or more current record and hash it out before the district court yes certainly that's the case and if I could just get to you would ask about bring back the current and I didn't haven't been able to get to it but I would say the most important thing is because we are arguing clear error both with respect to likelihood of success and with respect to the balance of the equities and the harms that those are factual errors the court said specifically on the issue of the 5937 claim right that both parties concede that sufficient water to keep steelhead in good condition entails enough to restore the historic fishery so that's the test that was applied if the court wants to apply a new test that's fine but that's not it didn't apply that test then you have to vacate for that reason we didn't appeal on that and neither did the other side but if you want to certify that issue or if you want to raise that issue to respond to you can do we need to park this case for current to get decided I don't think you do and and certainly not the other issues in this case the other thing I wanted to say the one more comment with respect to the the 5937 claim is in the balance of the equities and the public interest test again the judge had clear error and let me just point to two ways that's the case if you look at that 5937 section on balance the equities and public interest the judge doesn't mention the frog and the Gobi at all nowhere the other thing is the judge talks about water supply impacts but doesn't mention the declaration of Jared Emery who the county employed to provide a declaration on the water loss as a consequence of the flow restrictions that walk loss was estimated at 2,100 acre feet for a year as a minimum amount of loss so since the injunction has been in place the county has already lost 475 million gallons of water once we release that it's gone we have it stored we can use it for our communities in the county once we release it it's gone that's that's irreparable harm in my view and that's evidence of the court just as just one one clever so is the upshot of that that in a in a wetter year for lack of this front on scientific term and a wetter year that may not affect things but in a drier year is when you could get in like so this plan says you got to release water you don't know how later in the season whether it's going to be dry or a wet year and if it's a yeah if it's a if it turns out to be super dry you know like we had drought in past years I don't know that what the current status is but if we got a really dry year that's what the that's what these communities are worried about is that yes so the communities so the I'm just trying to figure out and I don't want to take too much time because I know we're but it's trying to figure out it it's not is the idea that it will it will necessarily every year affect the communities or is it sort of a depend on what the weather is going to what what the weather is going to be like what that whether it's a dry year or a wet year and if it turns out to be a dryer we could be impacted I'm trying to figure out so the 475 million gallons that we've released that we couldn't use that's gone to the communities communities still pay for all the infrastructure to have the dam and now the reservoir is lower if we have a wet year it'll refill to your point but we live in an environment where we know we're going to have a boom-and-bust cycle and the whole California water infrastructure is built on the on the basis of the need to store water in the good times so you have it in the bad but once you release that water it's gone all right you're over time unless my colleagues have additional questions thank you very much to both sides for your argument this morning's been very helpful the matter submitted and we'll issue a decision in the new course the court is in recess until tomorrow morning all rise
judges: NGUYEN, FORREST, VANDYKE